UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:23-CV-22553

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| Plaintiff, | |
| v. | |
| **HELLO HELLO MIAMI, LLC**, a limited liability company, | |
| and | |
| **LUIS E. LEON AMARIS a/k/a LUIS LEON,** individually and as an officer of **HELLO HELLO MIAMI, LLC,** | |
| Defendants. | |

**COMPLAINT FOR CIVIL PENALTIES, PERMANENT INJUNCTION, MONETARY RELIEF, AND OTHER RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its complaint alleges:

Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), and 57b, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, to obtain monetary civil penalties, a permanent injunction, and other relief for

1

Defendants' violations of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule (the "TSR" or "Rule"), as amended, 16 C.F.R. Part 310.

## SUMMARY OF CASE

1. Defendants Hello Hello Miami, LLC ("HHM"), and its Chief Executive Officer and sole shareholder, Luis E. Leon Amaris ("Leon"), provide voice over internet protocol ("VoIP") services to foreign telemarketers that deliver phone calls impersonating Amazon.com, Inc. ("Amazon"), calls to persons on the National "Do Not Call" Registry ("DNC Registry" or "Registry"), and calls playing a prerecorded message ("robocalls") to consumers that have not consented in violation of the TSR.

2. Defendants provided substantial assistance or support to the sellers and telemarketers despite knowing or consciously avoiding knowing that they were engaged in acts or practices that violated the TSR.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

4. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), and 15 U.S.C. § 53(b).

## DEFENDANTS

5. Defendant Hello Hello Miami, LLC is a limited liability company with its principal place of business at 78 SW 7th Street, Suite 500, Miami, Florida 33130. HHM transacts or has transacted business in this District and throughout the United States.

6. Defendant Luis E. Leon Amaris is the CEO of HHM. At all times relevant to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of HHM, including the acts and practices set forth in this Complaint. Leon is HHM's sole employee, sole shareholder, and is responsible for compliance, termination of business relationships, and responding to traceback requests, *i.e.*, requests regarding the origination of illegal VoIP traffic. Defendant Leon resides at an unknown address and, in connection with the matters alleged herein, transacts, or has transacted business in this District and throughout the United States.

## COMMERCE

7. At all times relevant to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## THE TELEMARKETING SALES RULE AND THE NATIONAL DO NOT CALL REGISTRY

8. Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

9. Among other things, the 2003 amendments to the TSR established a National Do Not Call registry, maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or online at donotcall.gov.

10. Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or online at donotcall.gov, or by contacting law enforcement authorities.

11. The TSR defines "telemarketing" as "a plan, program or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg).

12. Under the TSR, a "telemarketer" is "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(ff).

13. A "seller" is "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(dd).

14. The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry online at telemarketing.donotcall.gov, to pay any required fee(s), and to download the numbers not to call.

15. Under the TSR, an "outbound telephone call" is "a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution." 16 C.F.R. § 310.2(x).

16. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to a number on the Registry, unless the settler or telemarketer can demonstrate that it has obtained the call recipient's express written agreement to receive such calls from it or can

demonstrate that it already has an established business relationship with the call recipient. 16 C.F.R. § 310.4(b)(1)(iii)(B).

17. The TSR prohibits initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of any good or service, unless the telemarketer has an express written agreement from the recipient to receive such prerecorded messages from it. 16 C.F.R. § 310.4(b)(1)(v). Calls delivering prerecorded messages are commonly called "robocalls."

18. The TSR also prohibits misrepresenting a seller or telemarketer's affiliation with any person in the sale of goods or services. 16 C.F.R. § 310.3(a)(2)(viii).

19. The TSR further prohibits making false or misleading statements to induce a person to pay for goods or services or to induce a charitable contribution. 16 C.F.R. § 310.3(a)(4).

20. The TSR additionally prohibits failure to disclose the identity of a seller of goods or services truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call. 16 C.F.R. § 310.4(d)(1).

21. It is a violation of the TSR for any person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any practice that violates Sections 310.3(a), (c) or (d), or 310.4 of the TSR. 16 C.F.R. § 310.3(b).

22. Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

23. Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), authorize this Court to award monetary civil penalties of up to $50,120 for each violation of the TSR assessed after January 11, 2023, including penalties whose associated violation predated January 11, 2023.

## DEFENDANTS' UNLAWFUL ACTIVITIES

24. HHM is a nationwide provider of voice over internet protocol ("VoIP") services, *i.e.*, digital calling over the internet. It provides inbound services, outbound calling services, and VoIP termination, which is the routing of telephone calls from one provider to the next until the call is routed to the recipient.

25. HHM's customers are sellers or telemarketers that make outbound calls under the TSR. 16 C.F.R. § 310.2(ff), (dd), (x).

26. The Telecommunications Act defines "information service" as "the offering of a capability for generating, acquiring, storing, transforming, processing, retrieving, utilizing, or making available information via telecommunications[.]" 47 U.S.C. § 153(24).

27. HHM's interconnected VoIP services "transform[s] information" and/or "mak[es] available information via telecommunications." 47 U.S.C. § 153(24).

28. Therefore, HHM's VoIP services fit within the meaning of "information service" as defined by 47 U.S.C. § 153(24).

29. The Federal Communications Commission ("FCC") requires VoIP providers to register with the FCC and follow certain regulations, such as making 911 calls available and protecting customer call records from disclosure. HHM was registered with the FCC as a

6

"telecommunications carrier" that offers interstate or international telecommunications services or interconnected VoIP services.

## HHM's AMAZON ROBOCALLS

30.     In the last few years, the FTC has experienced an uptick in consumer complaints reporting business impersonator calls from scammers claiming to be Amazon.

31.     From at least October 6, 2021 to February 20, 2022 (the "relevant period"), HHM transmitted robocalls from foreign telemarketers to U.S. consumers on the DNC Registry via its VoIP interconnection services. Many of these pre-recorded messages impersonated Amazon in order to induce consumers to purchase goods or services or provide personal information.

32.     Providing VoIP interconnection services constitutes the provision of substantial support and assistance to a telemarketer under the TSR.

33.     Specifically, during the relevant period, HHM transmitted approximately 37,811,350 calls in the United States. Of those calls, approximately 52% were to U.S. customers on the DNC Registry. Almost 100% of these calls were of a duration of one minute or less. Massive volumes of very short calls are a distinct feature of fraudulent robocall campaigns. Many of the calls HHM transmitted included a pre-recorded message that stated: (i) the message was from Amazon and the consumer's account was on hold and their authorization was needed, (ii) the consumer's Amazon Prime account experienced a suspicious change, or (iii) the consumer's Amazon Prime account was about to be renewed.

34.     Amazon did not authorize these calls and the foreign telemarketers making these calls were not affiliated with Amazon.

35. Based on the massive volume of calls, their short duration, and their often deceptive nature, it should have been clear to Defendants that they were transmitting robocalls for which the sellers and telemarketers could not demonstrate, as the TSR requires, that they had obtained an express agreement from each call's recipient to receive calls playing a pre-recorded message from that seller or telemarketer. These same factors should have also made clear to Defendants that, for calls they transmitted to phone numbers on the National DNC Registry, the seller or telemarketer could not demonstrate having obtained an express agreement or having an established business relationship with the consumer.

36. For example, during the relevant period, HHM transmitted calls from at least ten foreign VoIP providers that transmitted robocalls to consumers in the United States that purported to be from Amazon. These calls stated, for example, the following:

> Hello. This is Amazon. This call is to authorize a payment of $999. We would like to inform you that there is an order placed for iPhone 11 Pro using your Amazon account. If you do not authorize this order, please press 1 to talk with Amazon specialists to report fraud or else press 2 to authorize.

37. Defendants repeatedly received notice that providers were using their services to transmit these types of illegal robocalls. For example, HHM received forty-two traceback requests from the USTelecom's Industry Traceback Group ("ITG")[1] between September 2021 and January 2022 regarding a client, VoIP Tech Solutions ("VoIP Tech"), in India.

38. These traceback requests included a link to an audio recording of each call, and stated the following:

> **As part of traceback conducted by the Industry Traceback Group, your network has been identified in the call path for voice traffic that has been deemed suspicious and potentially illegal.**

---

[1] The ITG is a collaboration of companies across the wireline, wireless, VoIP and cable industries that traces and identifies the source of illegal calls.

39. The traceback requests stated that the calls purported to be for an Amazon subscription campaign and informed consumers that their Amazon account would be auto renewed for Amazon Prime services.

40. HHM did not suspend VOIP Tech from sending further call traffic on its networks for three-and-a-half months after it began receiving such traceback requests.

41. Similarly, between December 11, 2021, and January 5, 2022, HHM transmitted illegal calls from Zathura IT Solutions ("Zathura IT"), to United States consumers. During that same period, HHM received 17 traceback requests from the ITG alerting it to the fraudulent nature of Zathura IT's calls.

42. Despite receipt of these traceback requests, HHM did not suspend Zathura IT until January 19, 2022.

43. HHM never suspended at least six providers that transmitted illegal calls using its services.

44. On March 22, 2022, the FCC sent a warning letter to HHM stating:

> We have determined that Hello Hello Miami, LLC ("Hello Hello Miami") is apparently transmitting illegal robocall traffic on behalf of one or more of its clients. You should investigate and, if necessary, cease transmitting such traffic immediately and take steps to prevent your network from continuing to be a source of apparently illegal robocalls.

45. Despite this warning, HHM continued to transmit illegal call traffic. For example, although HHM claimed to have suspended one such provider, Invoketel, on January 19, 2022, Invoketel continued to transmit traffic on HHM's networks through May 15, 2022.

46. Based on the facts and violations of law alleged in this Complaint, Plaintiff has reason to believe that Defendants are violating or are about to violate laws enforced by the

9

Commission because Defendants continued their unlawful acts or practices despite knowledge of numerous warnings concerning the unlawful conduct. In addition, Defendants remain in the VoIP industry and maintain the means, ability, and incentive to continue their unlawful conduct.

## VIOLATIONS OF THE TELEMARKETING SALES RULE

### Count I
### Assisting and Facilitating Violations of the Telemarketing Sales Rule

47. Defendants provided substantial assistance or support to their customers, who were "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," as defined by the TSR, 16 C.F.R. § 310.2.

48. As set forth above in paragraphs 23 to 47, in numerous instances, in connection with telemarketing, HHM's customers:

a. Initiated or caused the initiation of outbound telephone calls to telephone numbers on the National DNC Registry to induce the purchase of goods or services, in violation of 16 C.F.R. § 310.4(b)(1)(iii)(B);

b. Initiated or caused the initiation of outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services, in violation of 16 C.F.R. § 310.4(b)(1)(v);

c. Misrepresented, directly or by implication, in the sale of goods or services, their affiliation with, or endorsement or sponsorship by any person, in violation of 16 C.F.R. § 310.3(a)(2)(vii);

d. Made false or misleading statements to induce a person to pay for goods or services or to induce a charitable contribution, in violation of 16 C.F.R. § 310.3(a)(4); and

10

e.  Failed to disclose the identity of the seller of the goods or services truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, in violation of 16 C.F.R. § 310.4(d)(1).

49. At all relevant times, Defendants knew, or consciously avoided knowing, that their customers were making the unlawful calls described in paragraph 34, which violated § 310.4 and § 310.3(a) of the TSR.

50. Defendants' substantial assistance and support of TSR violations, as alleged in paragraphs 31 to 47, above, violates the TSR, 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

51. Consumers have suffered and will suffer substantial injury as a result of Defendants' violations of the TSR. Defendants' services facilitated millions of robocalls to consumers on the Do Not Call Registry and assisted robocall traffic that impersonated Amazon. These actions likely resulted in stolen information and financial loss. Absent injunctive relief by this Court, HHM and Leon are likely to continue to injure consumers and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

52. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and other ancillary relief to prevent and remedy any violation of any provision of law enforced by the FTC.

53. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by 16 C.F.R. § 1.98(d), authorizes this Court to award monetary

civil penalties of up to $50,120 for each violation of the TSR, 16 C.F.R. § 1.98(d). Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

54. This Court, in the exercise of its equitable jurisdiction, may award ancillary relief to remedy injury caused by Defendants' violations of the TSR and the FTC Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court, as authorized by Sections 5(a), 5(m)(1)(A), and 13(b) of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), and pursuant to its own equitable powers:

A. Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this complaint;

B. Award Plaintiff monetary civil penalties from each Defendant for every violation of the TSR;

C. Enter a permanent injunction to prevent future violations of the TSR and the FTC Act by Defendants; and

D. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: July 10, 2023

**BRIAN M. BOYNTON**
**Principal Deputy Assistant Attorney General**

**ARUN G. RAO**
**Deputy Assistant Attorney General**

**AMANDA N. LISKAMM**
**Director, Consumer Protection Branch**

**RACHAEL L. DOUD**
**Assistant Director, Consumer Protection Branch**

\s\ Rowan L. Reid
**ROWAN L. REID**
Special Florida Bar No. A5503062
**MEREDITH L. REITER**
Trial Attorneys
**Department of Justice**
**Civil Division**
**Consumer Protection Branch**
450 5th Street NW
Washington, DC 20530
rowan.l.reid@usdoj.gov
meredith.l.reiter@usdoj.gov

**Counsel for United States of America**

**JAMES A. WEINKLE**
**Assistant United States Attorney**
Florida Bar No. 0710891
Email: James.Weinkle@usdoj.gov
**Office of the United States Attorney**
**Southern District of Florida**
Alto Lee Adams Federal Courthouse
101 South U.S. Highway One, 3100
Fort Pierce, FL 34950
Telephone: 772.293.0945 (Direct)

**Counsel for United States of America**

FEDERAL TRADE COMMISSION
Sophia Siddiqui
Christine M. Todaro
Federal Trade Commission
600 Pennsylvania Ave. NW, Mailstop CC-5201
Washington, DC 20580

*OF COUNSEL*

13